KAREN P. HEWITT
United States Attorney
EUGENE S. LITVINOFF
Assistant U.S. Attorney
California State Bar No. 214318
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone No.: (619) 557-5790
E-Mail: Eugene.Litvinoff2@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) Criminal Case No. 07CR3162-L |
| Plaintiff, | ) Date:      January 4, 2008 |
| v. | ) Time:      2:00 p.m. |
| ALFREDO LUIS-TENORIO (2), | ) GOVERNMENT'S RESPONSE AND OPPOSITION TO DEFENDANT'S MOTIONS TO: |
| Defendant. | ) (1)  COMPEL DISCOVERY; |
| | ) (2)  PRESERVE EVIDENCE; |
| | ) (3)  DISMISS THE INDICTMENT; AND |
| | ) (4)  GRANT LEAVE TO FILE FURTHER MOTIONS |
| | ) TOGETHER WITH STATEMENT OF FACTS AND MEMORANDUM OF POINTS AND AUTHORITIES, AND GOVERNMENT'S MOTION FOR |
| | ) (1)  RECIPROCAL DISCOVERY |

COMES NOW, the plaintiff, UNITED STATES OF AMERICA, by and through its counsel Karen P. Hewitt, United States Attorney, and Eugene S. Litvinoff, Assistant U.S. Attorney, and hereby files its Response and Opposition to the motions filed on behalf of Defendant ALFREDO LUIS-TENORIO ("Defendant") and hereby files its Motion For Reciprocal Discovery.  This

1    Response and Opposition and Motion For Reciprocal Discovery is based upon the files and records

2    of this case.

### I

### INTRODUCTION

Defendant stands charged with three counts of transportation of illegal aliens, in violation

of 8 U.S.C. § 1324.

### II

### STATEMENT OF FACTS

**A.    Call from Escondido Police Department to Border Patrol at I-15 Checkpoint**

On October 21, 2007, at approximately 4:00 a.m., U.S. Border Patrol Agent Castillo

received a call from the Escondido Police Department relaying that they had just received a call

from a victim who stated that he was car-jacked in Oceanside, California and held against his will

at gun point by a bald Hispanic male wearing a white T-shirt. The victim further stated that he was

able to escape from the subject at a Circle K store in Escondido, California. The subject was last

scene driving a white Chevrolet pickup truck northbound on I-15. The subject was also overheard

by the convenient store clerk stating that he was headed to Riverside, California. Agent Castillo

relayed the alert to all agents working at the Murrieta Border Patrol Station, including Agent

Zermeno, who was working at the primary inspection area.

**B.    Primary Inspection – Agent Zermeno Encounters White Pickup**

At approximately 4:20 a.m., Agent Zermeno observed a white Chevrolet pickup approach

his location with a bald Hispanic male driving, and several passengers in the cab. Agent Zermeno

made contact with Defendant Jesus Munoz, Jr., who was driving the vehicle. Because the truck

and driver matched the description in the alert, Agent Zermeno ordered Munoz to place the truck

in park and raise his hands. Munoz placed the truck in park, but did not raise his hands. Instead,

Munoz kept his right hand near his leg. Fearing that Munoz had a weapon, Agent Zermeno again

ordered Munoz to raise his hands and then immediately requested backup. As other agents arrived,

Munoz complied with the order to raise his hands. At this point, Munoz stated: "I just gave them

a ride."

**C.      Defendant Munoz (D1) and Aliens Arrested**

Munoz was removed from the truck and placed under arrest.  Agent Zermeno identified himself as a Border Patrol Agent, conducted an immigration interview, and determined that the seven (7) passengers in the truck were citizens and nationals of Mexico illegally present in the United States.  Agents placed the aliens under arrest.

**D.      Truck Search – Loaded Firearm Seized**

Agent Zermeno asked Munoz for permission to search the truck; Munoz verbally consented.  Agent Anderson searched the truck and found a Baretta 32. Caliber, semiautomatic handgun, serial number DAA400773, located between the center console and the driver's seat. The handgun was loaded with one round in the chamber and six rounds in the magazine.

**E.      Car-jacking "Victim" Brought Over to Murrieta Station**

Agent Castillo informed the Escondido Police that they possibly had in their custody the vehicle and driver previously reported in the alert. After confirming with Escondido PD the match, the Escondido Police stated that the Oceanside Police Department was taking over the investigation.

At approximately 10:30 a.m., Oceanside Police Detective Darrah arrived at the Murrieta Border Patrol Station, accompanied by the alleged car-jacking victim, Defendant Alfredo Luis-Tenorio.  Defendant Tenorio voluntarily accompanied the detectives to help identify his assailant and provide a sworn statement.  In the course of Defendant Luis-Tenorio's statement, he implicated himself in the smuggling of the seven aliens found in the truck.

**F.      Defendant Munoz's Post-Miranda Statement**

Defendant Munoz was advised of his Miranda rights at approximately 11:05 a.m., and he agreed to give a statement.  Munoz stated that a friend had asked for his help in collecting some money from a person in San Diego.  The money was profit from an alien smuggling venture. Munoz further stated that he was driven to a house near Oceanside and was instructed to collect the money from the owner of the house.  Munoz confronted the homeowner, who began to shove Munoz off the property.  At this time, Munoz noticed the white Chevrolet Silverado occupied by

1    Defendant Luis-Tenorio.  Munoz entered the vehicle and could see that people were hiding in the

2    bed of the truck.

3    ### G.    Defendant Luis-Tenorio's Post-Miranda Statement

4    Defendant Luis-Tenorio was advised of his Miranda rights at approximately 3:01 p.m. and

5    he agreed to make a statement.  He stated that he is a Mexican citizen illegally present in the

6    United States.  He further stated that on October 20, 2007, at about 7:00 p.m., he made

7    arrangements with a friend named "Rosa" to help a known smuggler bring aliens north into the

8    United States from Mexico.  Luis-Tenorio stated that he was doing the friend a favor in return for

9    her helping to smuggle him into the United States in 2005.  "Rosa" picked Luis-Tenorio up at his

10   house and took him to a pre-arranged location where a small brown Honda sedan and a white

11   Chevrolet Silverado were located.  Luis-Tenorio was told to drive the truck and follow the Honda

12   south toward Alpine, and then west toward San Diego.  While following the Honda, the Honda

13   stopped on the side of the road and Luis-Tenorio noticed two individuals enter the Honda.  Seven

14   individuals then climbed into the bed of the truck.

15   Luis-Tenorio stated that he followed the Honda to a house in Oceanside.  There, Defendant

16   Munoz entered the truck using the front passenger door, pointed a gun at Luis-Tenorio, and

17   demanded that he drive away.  They drove around Highway 76 and I-15 for a while, and eventually

18   stopped at a Circle K store near Highway 78 and Escondido Boulevard.  Defendant Munoz told

19   Luis-Tenorio to "stay in the vehicle; I'm going to pay for the gas, if you get out I am going to

20   chase you and kill you."  Munoz took the truck keys and went into the store.  Luis-Tenorio stated

21   that he thought he would be safe if he made it inside the store, so he exited the truck and ran into

22   the store.  Luis-Tenorio motioned the store clerk that he was in trouble, but the clerk did not

23   understand Spanish.  At that point, Munoz left the store and went back to the truck.  Luis-Tenorio

24   was able to find a Spanish speaker who helped in contacting the police.

25   Luis-Tenorio stated that he knew the people in the truck were illegal aliens because "Rosa"

26   had told him that her husband was part of the group of aliens who were coming from Mexico by

27   walking through the mountains.  He also stated that "Rosa" offered to pay him $40.00 per

28   smuggled alien.

1    **H.    Material Witness Statements**

2         Material witnesses Fermin Tapia-Barrera, Avelino Sanchez-Merino, and Roberto Ramierz-

3    Hernandez all stated that they are citizens and nationals of Mexico illegally present in the United

4    States. All admitted to entered the United States illegally by walking through the mountains with

5    the aid of a foot guide. They stated that they were paying $1500 - $2000 to be smuggled to various

6    locations in the United Sates. At the Border Patrol Checkpoint, each of the three material

7    witnesses was interviewed and shown a photographic line-up.

8    **III**

9    **UNITED STATES' MEMORANDUM OF POINTS AND AUTHORITIES**

10   **A.    THE GOVERNMENT WILL CONTINUE TO COMPLY WITH ALL ITS
          DISCOVERY OBLIGATIONS**

11
12        The Government intends to fully comply with its discovery obligations under Brady v.

     Maryland, 373 U.S. 83 (1963), the Jencks Act (18 U.S.C. § 3500), and Rule 16 of the Federal
13
     Rules of Criminal Procedure. The Government has already made 155 pages of discovery and a
14
     DVD recording available to the defense. The Government anticipates that most discovery
15
     issues can be resolved amicably and informally, and has addressed Defendant's specific
16
     requests below.
17
          **(1)    The Defendant's Statements**
18
          The Government recognizes its obligation under Rules 16(a)(1)(A) and 16(a)(1)(B) to
19
     provide to Defendant the substance of Defendant's oral statements and Defendant's written
20
     statements. The Government has produced all of Defendant's written and videotaped statements
21
     that are known to the undersigned Assistant U.S. Attorney at this date. If the Government
22
     discovers additional oral or written statements that require disclosure under Rule 16(a)(1)(A) or
23
     Rule 16(a)(1)(B), such statements will be provided to Defendant.
24
          The Government has no objection to the preservation of the handwritten notes taken by any
25
     of the Government's agents and officers. See United States v. Harris, 543 F.2d 1247, 1253 (9th
26
     Cir. 1976) (agents must preserve their original notes of interviews of an accused or prospective
27
     government witnesses). However, the Government objects to providing Defendant with a copy
28

of any rough notes at this time.  Rule 16(a)(1)(A) does not require disclosure of the rough notes where the content of those notes have been accurately reflected in a type-written report.  See United States v. Brown, 303 F.3d 582, 590 (5th Cir. 2002); United States v. Coe, 220 F.3d 573, 583 (7th Cir. 2000) (Rule 16(a)(1)(A) does not require disclosure of an agent's notes even where there are "minor discrepancies" between the notes and a report).  The Government is not required to produce rough notes pursuant to the Jencks Act, because the notes do not constitute "statements" (as defined 18 U.S.C. § 3500(e)) unless the notes (1) comprise both a substantially verbatim narrative of a witness' assertion, and (2) have been approved or adopted by the witness.  United States v. Spencer, 618 F.2d 605, 606-07 (9th Cir. 1980).  The rough notes in this case do not constitute "statements" in accordance with the Jencks Act.  See United States v. Ramirez, 954 F.2d 1035, 1038-39 (5th Cir. 1992) (rough notes were not statements under the Jencks Act where notes were scattered and all the information contained in the notes was available in other forms).  The notes are not Brady material because the notes do not present any material exculpatory information, or any evidence favorable to Defendant that is material to guilt or punishment. Brown, 303 F.3d at 595-96 (rough notes were not Brady material because the notes were neither favorable to the defense nor material to defendant's guilt or punishment); United States v. Ramos, 27 F.3d 65, 71 (3d Cir. 1994) (mere speculation that agents' rough notes contained Brady evidence was insufficient).  If, during a future evidentiary hearing, certain rough notes become discoverable under Rule 16, the Jencks Act, or Brady, the notes in question will be provided to Defendant.

### (2)    Arrest Reports, Notes and Dispatch Tapes, and Audio/Video Recordings

The United States has provided the Defendant with arrest reports. As noted previously, agent rough notes, if any exist, will be preserved, but they will not be produced as part of Rule 16 discovery.   The United States is unaware of any dispatch tapes regarding Defendant's apprehension.

### (3)    Brady Material

Again, the United States is well aware of and will continue to perform its duty under Brady v. Maryland, 373 U.S. 83 (1963), and United States v. Agurs, 427 U.S. 97 (1976), to disclose exculpatory evidence within its possession that is material to the issue of guilt or punishment.

1    Defendant, however, is not entitled to all evidence known or believed to exist which is, or may be,

2    favorable to the accused, or which pertains to the credibility of the United States' case.  As stated

3    in United States v. Gardner, 611 F.2d 770 (9th Cir. 1980), it must be noted that "the prosecution

4    does not have a constitutional duty to disclose every bit of information that might affect the jury's

5    decision; it need only disclose information favorable to the defense that meets the appropriate

6    standard of materiality."  Id. at 774-775 (citation omitted).

7         The United States will turn over evidence within its possession which could be used to

8    properly impeach a witness who has been called to testify.

9         Although the United States will provide conviction records, if any, which could be used

10   to impeach a witness, the United States is under no obligation to turn over the criminal records of

11   all witnesses.  United States v. Taylor, 542 F.2d 1023, 1026 (8th Cir. 1976).  When disclosing such

12   information, disclosure need only extend to witnesses the United States intends to call in its case-

13   in-chief.  United States v. Gering, 716 F.2d 615, 621 (9th Cir. 1983); United States v. Angelini,

14   607 F.2d 1305, 1309 (9th Cir. 1979).

15        Finally, the United States will continue to comply with its obligations pursuant to

16   United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991).

17        **(4)    Sentencing Information**

18        Defendant claims that the United States must disclose any information affecting

19   Defendant's sentencing guidelines because such information is discoverable under Brady v.

20   Maryland, 373 U.S. 83 (1963).  The United States respectfully contends that it has no such

21   disclosure obligation under Brady.

22        The United States is not obligated under Brady to furnish a defendant with information

23   which he already knows.  United States v. Taylor, 802 F.2d 1108, 1118 n.5 (9th Cir. 1986).  Brady

24   is a rule of disclosure, and therefore, there can be no violation of Brady if the evidence is already

25   known to the defendant.  In such case, the United States has not suppressed the evidence and

26   consequently has no Brady obligation.  See United States v. Gaggi, 811 F.2d 47, 59 (2d Cir. 1987).

27        But even assuming Defendant does not already possess the information about factors which

28   might affect his guideline range, the United States would not be required to provide information

1  bearing on Defendant's mitigation of punishment until after Defendant's conviction or plea of

2  guilty and prior to his sentencing date.  See United States v. Juvenile Male, 864 F.2d 641, 647 (9th

3  Cir. 1988) ("No [Brady] violation occurs if the evidence is disclosed to the defendant at a time

4  when the disclosure remains in value.").  Accordingly, Defendant's demand for this information

5  is premature.

6       **(5)**    **Defendant's Prior Record**

7  The United States has already provided Defendant with a copy of his known criminal

8  record in accordance with Federal Rule of Criminal Procedure 16(a)(1)(B).

9       **(6)**    **Proposed 404(b) Evidence**

10  Should the United States seek to introduce any similar act evidence pursuant to Federal

11  Rule of Evidence 404(b), the United States will provide Defendant with notice of its proposed use

12  of such evidence and information about such bad act at the time the United States' trial

13  memorandum is filed.

14       **(7)**    **Evidence Seized**

15  The United States has complied and will continue to comply with Rule 16(a)(1)(C) in

16  allowing Defendant an opportunity, upon reasonable notice, to examine, copy and inspect physical

17  evidence which is within the possession, custody or control of the United States, and which is

18  material to the preparation of Defendant's defense or are intended for use by the United States as

19  evidence in chief at trial, or were obtained from or belong to Defendant, including photographs.

20  The United States, however, need not produce rebuttal evidence in advance of trial.  United

21  States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984), cert. denied, 474 U.S. 953 (1985).

22       **(8)**    **Tangible Objects**

23  The Government has complied and will continue to comply with Rule 16(a)(1)(E) in

24  allowing Defendant an opportunity, upon reasonable notice, to examine, inspect, and copy all

25  tangible objects seized that is within its possession, custody, or control, and that is either material

26  to the preparation of Defendant's defense, or is intended for use by the Government as evidence

27  during its case-in-chief at trial, or was obtained from or belongs to Defendant.   The Government

28

1    need not, however, produce rebuttal evidence in advance of trial. United States v. Givens, 767

2    F.2d 574, 584 (9th Cir. 1984).

3    **(9)**    **Evidence of Bias or Motive to Lie**

4    The United States is unaware of any evidence indicating that a prospective witness is biased

5    or prejudiced against Defendant. The United States is also unaware of any evidence that

6    prospective witnesses have a motive to falsify or distort testimony.

7    **(10)**    **Impeachment Evidence**

8    The United States will turn over evidence within its possession which could be used to

9    properly impeach a witness who has been called to testify.

10    **(11)**    **Criminal Investigation of Government Witness**

11    Defendants are not entitled to any evidence that a prospective witness is under criminal

12    investigation by federal, state, or local authorities. "[T]he criminal records of such [Government]

13    witnesses are not discoverable." United States v. Taylor, 542 F.2d 1023, 1026 (8th Cir. 1976);

14    United States v. Riley, 657 F.2d 1377, 1389 (8th Cir. 1981) (holding that since criminal records

15    of prosecution witnesses are not discoverable under Rule 16, rap sheets are not either); cf. United

16    States v. Rinn, 586 F.2d 113, 118-19 (9th Cir. 1978) (noting in dicta that "[i]t has been said that

17    the Government has no discovery obligation under Fed. R. Crim. P. 16(a)(1)(C) to supply a

18    defendant with the criminal records of the Government's intended witnesses.") (citing Taylor, 542

19    F.2d at 1026).

20    The Government will, however, provide the conviction record, if any, which could be used

21    to impeach witnesses the Government intends to call in its case-in-chief. When disclosing such

22    information, disclosure need only extend to witnesses the United States intends to call in its case-

23    in-chief. United States v. Gering, 716 F.2d 615, 621 (9th Cir. 1983); United States v. Angelini,

24    607 F.2d 1305, 1309 (9th Cir. 1979).

25    **(12)**    **Evidence Affecting Perception, Recollection, Communication or Veracity**

26    The United States is unaware of any evidence indicating that a prospective witness has a

27    problem with perception, recollection, communication, or truth-telling.

28

1

**(13)    Witness Addresses**

2    The Government has already provided Defendant with the reports containing the names of

3    the agents involved in the apprehension and interviews of Defendant.  A defendant in a non-capital

4    case, however, has no right to discover the identity of prospective Government witnesses prior to

5    trial.  See Weatherford v. Bursey, 429 U.S. 545, 559 (1977); United States v. Dishner, 974 F.2d

6    1502, 1522 (9th Cir 1992) (citing United States v. Steel, 759 F.2d 706, 709 (9th Cir. 1985)); United

7    States v. Hicks, 103 F.23d 837, 841 (9th Cir. 1996).   Nevertheless, in its trial memorandum, the

8    Government will provide Defendant with a list of all witnesses whom it intends to call in its case-

9    in-chief, although delivery of such a witness list is not required.  See United States v. Discher, 960

10    F.2d 870 (9th Cir. 1992); United States v. Mills, 810 F.2d 907, 910 (9th Cir. 1987).   The

11    Government is not aware of any "tips" provided by anonymous or identified persons that resulted

12    in Defendant's arrest.

13    The Government objects to any request that the Government provide a list of every witness

14    to the crimes charged who will not be called as a Government witness.  "There is no statutory basis

15    for granting such broad requests," and a request for the names and addresses of witnesses who will

16    not be called at trial "far exceed[s] the parameters of Rule 16(a)(1)(C)."  United States v. Hsin-

17    Yung, 97 F. Supp.2d 24, 36 (D. D.C. 2000) (quoting United States v. Boffa, 513 F. Supp. 444, 502

18    (D. Del. 1980)).  The Government is not required to produce all possible information and evidence

19    regarding any speculative defense claimed by Defendant.  Wood v. Bartholomew, 516 U.S. 1, 6-8

20    (1995) (per curiam) (holding that inadmissible materials that are not likely to lead to the discovery

21    of admissible exculpatory evidence are not subject to disclosure under Brady).

22    **(14)    Witnesses Favorable to the Defendant**

23    As stated earlier, the Government will continue to comply with its obligations under Brady

24    and its progeny.  At the present time, the Government is not aware of any witnesses who have

25    made an arguably favorable statements concerning Defendant or who could not identify him or

26    who were unsure of his identity or participation in the crime charged.

27    / /

28    / /

1

**(15)     Statements Relevant to the Defense**

2

To reiterate, the United States will comply with all of its discovery obligations.  However,

3

"the prosecution does not have a constitutional duty to disclose every bit of information that might

4

affect the jury's decision; it need only disclose information favorable to the defense that meets the

5

appropriate standard of materiality."  Gardner, 611 F.2d at 774-775 (citation omitted).

6

**(16)     Jencks Act Material**

7

The Jencks Act, 18 U.S.C. § 3500, requires that, after a Government witness has testified

8

on direct examination, the Government must give the Defendant any "statement" (as defined by

9

the Jencks Act) in the Government's possession that was made by the witness relating to the

10

subject matter to which the witness testified. 18 U.S.C. § 3500(b).  A "statement" under the Jencks

11

Act is (1) a written statement made by the witness and signed or otherwise adopted or approved

12

by him, (2) a substantially verbatim, contemporaneously recorded transcription of the witness's

13

oral statement, or (3) a statement by the witness before a grand jury. 18 U.S.C. § 3500(e).  If notes

14

are read back to a witness to see whether or not the government agent correctly understood what

15

the witness was saying, that act constitutes "adoption by the witness" for purposes of the Jencks

16

Act. United States v. Boshell, 952 F.2d 1101, 1105 (9th Cir. 1991) (citing Goldberg v. United

17

States, 425 U.S. 94, 98 (1976)).  While the Government is only required to produce all Jencks Act

18

material after the witness testifies, the Government plans to provide most (if not all) Jencks Act

19

material well in advance of trial to avoid any needless delays.

20

**(17)     Giglio Information**

21

As stated previously, the United States will comply with its obligations pursuant to Brady

22

v. Maryland, 373 U.S.  83 (1963), the Jencks Act, United States v. Henthorn, 931 F.2d 29 (9th Cir.

23

1991), and Giglio v. United States, 405 U.S. 150 (1972).

24

**(18)     Reports of Scientific Tests or Examinations**

25

Defendant requests written reports of tests pursuant to Federal Rules of Criminal Procedure

26

16(f).  The United States will disclose to Defendant the name, qualifications, and a written

27

summary of testimony of any expert the United States intends to use during its case-in-chief at trial

28

pursuant to Fed. R. Evid. 702, 703, or 705.

1

**(19)** *Henthorn* **Material**

2   The United States will continue to comply with its obligations pursuant to <u>United States</u>

3   <u>v. Henthorn</u>, 931 F.2d 29 (9th Cir. 1991).

4   **(20)** **Informants and Cooperating Witnesses**

5   At this time, the Government is not aware of any confidential informants or cooperating

6   witnesses involved in this case.  The Government must generally disclose the identity of

7   informants where (1) the informant is a material witness, or (2) the informant's testimony is crucial

8   to the defense.  <u>Roviaro v. United States</u>, 353 U.S. 53, 59 (1957).  If there is a confidential

9   informant involved in this case, the Court may, in some circumstances, be required to conduct an

10  in-chambers inspection to determine whether disclosure of the informant's identity is required

11  under <u>Roviaro</u>.  See <u>United States v. Ramirez-Rangel</u>, 103 F.3d 1501, 1508 (9th Cir. 1997).  If the

12  Government determines that there is a confidential informant somehow involved in this case, the

13  Government will either disclose the identity of the informant or submit the informant's identity to

14  the Court for an in-chambers inspection.

15  **(21)** **Expert Witnesses**

16  The Government will comply with Rule 16(a)(1)(G) and provide Defendant with a written

17  summary of any expert testimony that the Government intends to use under Rules 702, 703, or 705

18  of the Federal Rules of Evidence during its case-in-chief at trial.  This summary shall include the

19  expert witnesses' qualifications, the expert witnesses opinions, the bases, and reasons for those

20  opinions.

21  **(22)** **Personnel Records of Government Officers Involved in the Arrest**

22  The United States will continue to comply with its obligations pursuant to <u>United States</u>

23  <u>v. Henthorn</u>, 931 F.2d 29 (9th Cir. 1991).

24  **(23)** **Training of Relevant Law Enforcement Officers**

25  The United States objects to Defendant's overreaching request for copies of any and all

26  training manuals utilized by the law enforcement academies that pertain to interrogation

27  techniques, interview techniques, and "suggestive" questioning.  Defendant cites no authority

28  whatsoever in support of this request.  Defendant does not explain how <u>Brady</u>, Rule 16, or any

1   other rule of disclosure require the United States to produce the requested information.  The

2   training manuals can in no sense be labeled impeachment information, exculpatory information,

3   or information fitting into any category of Rule 16.  The rules and law of discovery are designed

4   to guarantee Defendant access to relevant impeachment information, exculpatory evidence, expert

5   testimony, and physical evidence, not provide an opportunity for a fishing expedition for

6   information regarding the law enforcement agencies.

7          **(24)     Names and Contact Information for All Agents in the Field at Time of Arrest**

8          Again, the Government has already provided Defendant with the reports containing the

9   names of the agents involved in the apprehension and interviews of Defendant.  A defendant in a

10  non-capital case, however, has no right to discover the identity of prospective Government

11  witnesses prior to trial.  See Weatherford v. Bursey, 429 U.S. 545, 559 (1977); United States v.

12  Dishner, 974 F.2d 1502, 1522 (9th Cir 1992) (citing United States v. Steel, 759 F.2d 706, 709 (9th

13  Cir. 1985)); United States v. Hicks, 103 F.23d 837, 841 (9th Cir. 1996).  Nevertheless, in its trial

14  memorandum, the Government will provide Defendant with a list of all witnesses whom it intends

15  to call in its case-in-chief, although delivery of such a witness list is not required.  See United

16  States v. Discher, 960 F.2d 870 (9th Cir. 1992); United States v. Mills, 810 F.2d 907, 910 (9th Cir.

17  1987).

18         The Government objects to any request that the Government provide a list of every witness

19  to the crimes charged who will not be called as a Government witness.  "There is no statutory basis

20  for granting such broad requests," and a request for the names and addresses of witnesses who will

21  not be called at trial "far exceed[s] the parameters of Rule 16(a)(1)(C)."  United States v. Hsin-

22  Yung, 97 F. Supp.2d 24, 36 (D. D.C. 2000) (quoting United States v. Boffa, 513 F. Supp. 444, 502

23  (D. Del. 1980)).  The Government is not required to produce all possible information and evidence

24  regarding any speculative defense claimed by Defendant.  Wood v. Bartholomew, 516 U.S. 1, 6-8

25  (1995) (per curiam) (holding that inadmissible materials that are not likely to lead to the discovery

26  of admissible exculpatory evidence are not subject to disclosure under Brady).

27  / /

28

**(25)** **Video Recordings**

See Response #1 (Defendant's Statements)

**(26)** **Agreements Between the Government and Witnesses**

The Government has not made or attempted to make any agreements with prospective Government witnesses for any type of compensation for their cooperation or testimony.

**(27)** **Performance Goals and Policy Awards**

As with the request for training materials above, the United States objects to Defendant's overreaching request for information regarding standards used to measure, compensate, or reprimand law enforcement officers.  Again, Defendant cites no authority in support of this request. Defendant does not explain how Brady, Rule 16, or any other rule of disclosure require the United States to produce the requested information.

**(28)** **TECS Reports**

The United States opposes Defendant's request for TECS border crossing reports.  While disclosure would be required if the Government intended to use TECS information as Rule 404(b) evidence, see United States v. Vega, 188 F.3d 1150 (9th Cir. 1999), there is no valid basis for requiring disclosure where the information will not be used as Rule 404(b) evidence.  As stated above, the United States will comply with its Rule 404(b) notice and disclosure obligations.

**(29)** **Residual Request**

The Government has already complied with Defendant's request for prompt compliance with its discovery obligations.  The Government will comply with all of its discovery obligations, but objects any broad and unspecified residual discovery requests.

**B.** **PRESERVATION OF EVIDENCE**

The United States will preserve all evidence to which Defendant is entitled pursuant to the relevant discovery rules.  However, the United States objects to Defendant's blanket request to preserve all physical evidence.

The United States has complied and will continue to comply with Rule 16(a)(1)(C) in allowing Defendant an opportunity, upon reasonable notice, to examine, copy and inspect physical

1    evidence which is within his possession, custody or control of the United States, and which is

2    material to the preparation of Defendant's defense or are intended for use by the United States as

3    evidence in chief at trial, or were obtained from or belong to Defendant, including photographs.

4    The United States has made the evidence available to Defendant and Defendant's investigators and

5    will comply with any request for inspection.

6        Again, the United States will continue to comply with its obligations pursuant to

7    United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991).

8    **C.    DEFENDANT'S MOTION TO DISMISS THE INDICTMENT DUE TO THE
         RELEASE OF MATERIAL WITNESSES SHOULD BE DENIED**

9

10   Defendant contends that he is prejudiced by the release of the material witnesses in this

11   case. According to Defendant, the United States' deportation of these witnesses was in violation

     of United States v. Valenzuela-Bernal, 458 U.S. 858 (1982). This court should deny Defendant's
12
     motion to dismiss for the following reasons. First, Defendant knowingly and intelligently executed
13
     a waiver releasing the material witnesses. Second, Defendant fails to establish that: (1) the United
14
     States acted in bad faith by returning alien witnesses to Mexico in accordance with statutory
15
     mandates; and (2) he is prejudiced by the United States' conduct.
16
         **1.    Defendant Knowingly and Intelligently Waived the Material Witnesses'
17              Presence**

18   As discovery already provides makes clear, Defendant was properly advised, in the Spanish

19   language, of his right to retain the material witnesses in this case. There were seven material

20   witnesses involved in the instant offense and three of the seven were retained. Defendant

21   acknowledged his understanding of the right to retain the other material witnesses by signing the

22   Advise of Rights-Retention of Witnesses Form. Defendant acknowledged that he understood his

23   rights. He also check the box that indicated that he did not wish to retain any materials witnesses.

24   Pursuant to United States v. Lujan-Castro, 602 F.2d 877 (9th Cir. 1979), the waiver is valid

25   if it is knowingly and intelligently executed. Whether a waiver is intelligent depends upon the

26   particular facts in the case, including the background, experience, and conduct of the accused. See

27   Brewer v. Williams, 430 U.S. 387, 403 (1977); see also United States v. Rodriguez-Gastelum, 569

28

1   F.2d 482, 483 (9th Cir. 1978).  Among the rights that were relayed to Defendant, he was informed

2   that he had the right to retain the material witnesses at no cost to him and that he had a right to

3   have a lawyer assist them in making the decision to release the material witnesses.  Defendant

4   decided to not exercise his right to have counsel present and agreed to release the material

5   witnesses.  Defendant is an adult and does not demonstrate any mental disabilities.  Defendant had

6   the mental capacity and was old enough to knowingly and intelligently execute the waiver.

7   　　　Assistance of counsel is not required for Defendant to execute a waiver.  Lujan-Castro, 602

8   F.2d at 878.  Defendant can waive his right to counsel to discuss the decision to execute a

9   Lujan-Castro waiver just as he may waive his right to counsel prior to a custodial interrogation.

10  Id. at 878-79.  In addition, in the Miranda and Lujan-Castro context, a defendant need not

11  understand all possible consequences that would flow from waiving a right in order to execute a

12  valid waiver.  See Derrick v. Peterson, 924 F.2d 813, 824 (9th Cir. 1990) (citing Oregon v. Elstad,

13  470 U.S. 298, 316 (1985)).

14  　　　In this instance, Agents inquired as to whether Defendant wanted to retain any witnesses.

15  Defendant knowingly and voluntarily waived any right that may have existed to retain the other

16  alien witnesses for their trial and should not thereafter be permitted to object to, or seek dismissal

17  of his charges based on, the release of witnesses to which he agreed.

18  　　　"Allowing Defendant to preserve his objection to the release of the witnesses until after

19  they are released [pursuant to his valid waiver] would place the government in the impossible

20  position of being faced with an objection once it is too late to take any necessary corrective

21  action."  United States v. Santos-Pinon, 146 F.3d 734, 736 (9th Cir. 1998).  Here, the investigating

22  agents comported with the letter and spirit of the law.  "[I]f the government were forced to hold

23  witnesses to avoid a possible future objection, this action would not only contravene [the

24  Valenzuela-Bernal Court's holding that Congress has determined that prompt deportation

25  constitutes the most effective method for curbing the enormous flow of illegal aliens across our

26  southern border], it would also contravene this court's own mandate to release witnesses, even

27

28

those who will return to a foreign country, absent a showing of 'failure of justice.'" <u>Santos-Pinon</u>, 146 F.3d at 736.

### 2. <u>Defendant Fails to Satisfy the Two-Pronged Test Outlined In Valenzuela-Bernal</u>

Defendant argues that his constitutional rights were violated by deporting the other material witnesses. However, the mere fact that the United States allows a witness to voluntarily return to their country or deports a witness will not establish a violation of the Due Process Clause of the Fifth Amendment or of the Compulsory Process Clause of the Sixth Amendment. <u>United States v. Valenzuela-Bernal</u>, 458 U.S. 858, 873 (1982). In <u>Valenzuela-Bernal</u>, the Court applied this two-pronged test when the United States deported material witnesses in connection with alien smuggling charges. <u>Id.</u> Under this two-pronged test, Defendant must make an initial showing that the United States acted in bad faith and that this conduct resulted in prejudice to Defendant's case. <u>Valenzuela-Bernal</u>, 458 U.S. at 872-72; <u>see also</u> <u>United States v. Armenta</u>, 69 F.3d 304, 307 (9th Cir. 1995) (citing <u>United States v. Dring</u>, 930 F.2d 687, 693 (9th Cir. 1991) (reiterating the two-pronged test in <u>Valenzuela-Bernal</u>).) Applying the two-pronged standard, Defendant fails to satisfy his burden in order to obtain dismissal.

### A. Defendant Cannot Show That The United States Acted in Bad Faith

Defendant alleges bad faith but fails to support this allegation. As stated in <u>Dring</u>, the United States is not required to make an initial showing that the deportations were made in "good faith." <u>Dring</u>, 930 F.2d at 694. Instead, the Ninth Circuit held that it is the criminal defendant who bears the burden of proving that the United States acted in bad faith. <u>Id.</u>

Bad faith as a general rule entails "intentional" government misconduct. <u>Armenta</u>, 69 F.3d at 307 n.1 (citing <u>Dring</u>, 930 F.2d at 695). To show bad faith, Defendant must establish that the government intentionally returned witnesses or suppressed evidence to gain an unfair tactical advantage. <u>Armenta</u>, 69 F.3d at 308; <u>United Sates v. Laurins</u>, 857 F.2d 529, 538 (9th Cir. 1988); <u>Dring</u>, 930 F.2d at 695. Bad faith constitutes "official animus" or a "conscious effort to suppress exculpatory evidence." <u>Jones v. McCaughtry</u>, 965 F.2d 473, 477 (7th Cir. 1992) (citing <u>California v. Trombetta</u>, 467 U.S. 479, 488 (1984)).

1    In <u>Dring</u>, the defendant was being prosecuted for importation of marijuana. <u>Dring</u>, 930

2    F.2d at 695. The United States deported eleven alien eyewitnesses. <u>Id.</u> After finding that the

3    defendant failed to make the requisite showing that the witnesses' testimony would have been

4    material and non-cumulative, the Ninth Circuit discussed the issue of bad faith. <u>Id.</u> The appellate

5    court gave two examples as to what could constitute bad faith: (1) the United States failed to

6    follow normal deportation procedures, or (2) the United States deported the aliens in order to gain

7    an unfair tactical advantage at trial. <u>Id.</u> at 695.

8    Here, Defendant fails to show how the United States acted in bad faith by returning the

9    aliens. The Agents made a good-faith attempt to ascertain whether the material witnesses had

10    exculpatory or incriminating evidence regarding Defendant. The reports indicate that the material

11    witnesses returned to Mexico did not have testimony favorable to Defendant. Nevertheless, the

12    United States retained three material witnesses in this case, and Defendant will have an opportunity

13    to interview and confront and cross-examine them before and at trial. Moreover, the reports

14    indicate that the material witnesses' testimony are consistent with each other. Any testimony by

15    the other material witnesses would only surmount to cumulative testimony. Thus, the Agents acted

16    in good faith, not bad faith; and the remaining alien witnesses were returned to Mexico in

17    compliance with the mandates of Congress and the Supreme Court's opinion in <u>Valenzuela-Bernal</u>,

18    458 U.S. 858.

19    In the present case, the record does not demonstrate that the Border Patrol failed to follow

20    normal procedure. Furthermore, there is no evidence to suggest that the Border Patrol deported

21    witnesses to gain an unfair tactical advantage at trial. He claims a deported alien could have

22    established that he was not the person who drove the group in the United States. However, there

23    is nothing in the records of the material witnesses that were returned that indicates he was not the

24    driver.

25    There is nothing to suggest the Border Patrol acted incompetently, recklessly, or with bad

26    faith or evil intent. Instead, they properly handled an emergency situation created by Defendant

27    that created substantial risk and endangerment to those involved. Thus, dismissal of the charges

28

1    is not warranted.  Instead, Defendant's remedy is to point out any perceived shortcomings of the

2    investigation during cross-examination.

3    ### B.    Defendant Cannot Show That He Was Prejudiced

4        To prevail under the "prejudice" prong (the second prong), the defendant must at least

5    make "a plausible showing that the testimony of the deported witnesses would have been material

6    and favorable to his defense, in ways not merely cumulative to the testimony of available

7    witnesses." Valenzuela, 458 U.S. at 873; see also United States v. Gonzalo Beltran, 915 F.2d 487,

8    489 (9th Cir. 1990) (quoting Valenzuela-Bernal, and holding that a defendant must show the

9    testimony would have been "both material and favorable to the defense."); United States v.

10   Cervantes-Gaitan, 792 F.2d 770, 773 (9th Cir. 1986) (citing to Valenzuela-Bernal).  In Valenzuela,

11   the Court defined the relevant test of materiality: "As in other cases concerning the loss of material

12   evidence, sanctions will be warranted for deportation of alien witnesses only if there is a

13   reasonable likelihood that the testimony would have affected the judgment of the trier of fact."

14   Valenzuela-Bernal, 458 U.S. at 872-73.  It is the defendant's burden to explain what material,

15   favorable evidence the illegal aliens who were released would provide.  Id.

16       Here, Defendant claims that the United States deported witnesses essential to his defense.

17   However, he fails to show how the voluntarily returned witnesses are essential to his defense.

18   Again, the reports indicate that the material witnesses returned to Mexico did not have testimony

19   favorable to Defendant.  Thus, Defendant has failed to make a "plausible showing" that the aliens'

20   return to their country resulted in "prejudice" to his case.

21       Even if the Court finds that the returned witnesses' had material information, Defendant

22   nevertheless fails to show how their possible testimony is more than "merely cumulative."  As

23   noted above, the United States kept three witnesses whose testimony would be consistent with that

24   of the witnesses returned.  Further witness retention would be merely cumulative.  Therefore,

25   Defendant cannot show prejudice.

26       Under Valenzuela-Bernal, and more recently in Dring, there is no doubt that Defendant

27   must satisfy both prongs in order for the Court to grant the relief sought by Defendant, which is

28

1    the dismissal of the Indictment.  Because Defendant failed to satisfy either prong under

2    <u>Valenzuela-Bernal</u>, his motion to dismiss the Indictment must be denied.

3           **3.      There is No Brady Violation**

4           Defendant claims return of the other material witnesses amounts to a violation of <u>Brady v.</u>

5    <u>Maryland</u>, 373 U.S. 83 (1963).  However, there is nothing to establish that these witnesses had

6    exculpatory information.  Again, the reports indicate that the material witnesses returned to Mexico

7    did not have testimony favorable to Defendant.  On the contrary, the returned witnesses made

8    statements that they were illegally in the United States and their family members were to pay a sum

9    of money for their smuggling upon their successful arrival in the United States.  Even if the seven

10   returned "witnesses" did not, or could not, or would not identify Defendant as the driver, such

11   testimony is not remotely exculpatory and does not fall within the scope of <u>Brady</u>.  <u>See</u>, <u>e.g.</u>, <u>Smith</u>

12   <u>v. Steward</u>, 140 F.3d 1263 (9th Cir. 1998) (holding that it was difficult to see how alleged <u>Brady</u>

13   information was "favorable"; and, even if favorable, it was so weak, so remote, and so inconclusive

14   that it is highly unlikely that the information would have any effect on the verdict).  Accordingly,

15   the Indictment should not be dismissed because the United States permitted the other material

16   witnesses to return to their country.

17   **D.     THE GOVERNMENT DOES NOT OPPOSE LEAVE TO FILE FURTHER**
     **MOTIONS, SO LONG AS THEY ARE BASED ON NEW EVIDENCE**
18
19          The Government does not object to the granting of leave to file further motions as long as

20   the order applies equally to both parties and any additional defense motions are based on newly

21   discovered evidence or discovery provided by the Government subsequent to the instant motion.

22                                         **IV**

23             **GOVERNMENT'S MOTION FOR RECIPROCAL DISCOVERY**

24   **A.     ALL EVIDENCE FOR DEFENDANT'S CASE-IN-CHIEF**

25          Since the Government will honor Defendant's request for disclosure under Rule

26   16(a)(1)(E), the Government is entitled to reciprocal discovery under Rule 16(b)(1).  Pursuant to

27   Rule 16(b)(1), the United States requests that Defendant permit the Government to inspect, copy

28   and photograph any and all books, papers, documents, photographs, tangible objects, or make

1   copies or portions thereof, which are within the possession, custody, or control of Defendant and

2   which Defendant intends to introduce as evidence in his case-in-chief at trial.

3          The Government further requests that it be permitted to inspect and copy or photograph any

4   results or reports of physical or mental examinations and of scientific tests or experiments made

5   in connection with this case, which are in the possession and control of Defendant, which he

6   intends to introduce as evidence-in-chief at the trial, or which were prepared by a witness whom

7   Defendant intends to call as a witness.  The Government also requests that the Court make such

8   order as it deems necessary under Rules 16(d)(1) and (2) to ensure that the Government receives

9   the reciprocal discovery to which it is entitled.

10  **B.     RECIPROCAL JENCKS – STATEMENTS BY DEFENSE WITNESSES**

11         Rule 26.2 provides for the reciprocal production of Jencks material. Rule 26.2 requires

12  production of the prior statements of all witnesses, except a statement made by Defendant.  The

13  time frame established by Rule 26.2 requires the statements to be provided to the Government after

14  the witness has testified.  However, to expedite trial proceedings, the Government hereby requests

15  that Defendant be ordered to provide all prior statements of defense witnesses by a reasonable date

16  before trial to be set by the Court.  Such an order should include any form in which these

17  statements are memorialized, including but not limited to, tape recordings, handwritten or typed

18  notes and reports.

19                                        **V**

20                                 **CONCLUSION**

21         For the foregoing reasons, the United States requests that the Court deny Defendant's

22  motions, except where unopposed, and grant the Government's motion for reciprocal discovery.

23         DATED: January 4, 2008

24                                            Respectfully submitted,

25                                            KAREN P. HEWITT
                                             United States Attorney

26

27                                            /s/ *Eugene S. Litvinoff*
                                             EUGENE S. LITVINOFF
28                                            Assistant U.S. Attorney

1
2                          UNITED STATES DISTRICT COURT
3                        SOUTHERN DISTRICT OF CALIFORNIA
4   UNITED STATES OF AMERICA,        )        Case No. 07CR3162-L
                                     )
5              Plaintiff,            )
                                     )
6              v.                    )
                                     )        CERTIFICATE OF SERVICE
7   ALFREDO LUIS-TENORIO (2),        )
                                     )
8              Defendant.            )
                                     )
9
10  IT IS HEREBY CERTIFIED THAT:
11          I, EUGENE S. LITVINOFF, am a citizen of the United States and am at least eighteen
12  years of age.  My business address is 880 Front Street, Room 6293, San Diego, California 92101-
    8893.
13
14          I am not a party to the above-entitled action.  I have caused service of **GOVERNMENT'S**
15  **RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS AND GOVERNMENT'S**
16  **MOTION FOR RECIPROCAL DISCOVERY** on the following parties by electronically filing
17  the foregoing with the Clerk of the District Court using its ECF System, which electronically
    notifies them.
18
19          **1.      Candis Mitchell, Esq.**
20          **2.      Paul Turner, Esq.**
21          I hereby certify that I have caused to be mailed the foregoing, by the United States Postal
22  Service, to the following non-ECF participants on this case:
            N/A
23
24  the last known address, at which place there is delivery service of mail from the United States
    Postal Service.
25
26          I declare under penalty of perjury that the foregoing is true and correct.
27          Executed on January 4, 2008
                                        /s/ *Eugene S. Litvinoff*
28

Government's Response – Luis-Tenorio                                         07CR3162-L

| | |
|---|---|
| 1 | EUGENE S. LITVINOFF |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |